MISSOULA MERCANTILE CO., Respondent, *v.* O'DON-NELL et al., Appellants.

[No. 1192.]

[Submitted January 31, 1900.    Decided April 2, 1900.]

*Appeal—Briefs—Mechanic's Lien—Lienable Materials—Evidence—Burden of Proof—Owner—Recorded Claim of Lien—Establishment of Debt—Parties—Pleading.*

1.   Where appellant's brief contains citations of authorities, without any attempt to apply or refer them, in a consecutive or orderly way, to errors assigned, such assignments of error will not be considered on appeal, as such a brief fails to meet the requirements of Section 3, of Rule X., of the Supreme Court.
2.   A cover for a stovepipe flue, opening into the chimney from the interior of a building, and removable when such flue was to be used, was not material entering into the construction of the building, nor a fixture, and hence such building was not subject to a lien therefor.
3.   The burden is on a lien claimant to establish his lien, and to support this burden, he must show not only that he furnished the materials, but also that they were used

for the enhancement of the property to which he claims he has a right to resort as security for.the debt thus created; in the absence of this showing, his equity does not arise.

4. A husband of the owner of a building contracted with plaintiff to furnish the hardware for the building, and plaintiff's books showed the items charged to the husband. The account was kept separate from other accounts with the husband, and, on being subsequently examined by him, he declared it correct and promised to pay it; but there was no evidence that the hardware charged was ever furnished for, or entered into, the construction of the building. *Held,* that such proof was insufficient to show that the materials were used for, or enhanced the value of, the building, so as to entitle plaintiff to a mechanic's lien therefor.

5. Code of Civil Procedure, Section 2131, provides that a lien claim for materials furnished in the construction of a building shall contain an account of the amount due, and a description of the property to be charged; and Section 2132 declares that the county clerk shall make an abstract thereof in a book kept by him, which shall contain the name of the person against whose property the lien is filed. *Held,* that a recorded lien claim for materials furnished in the construction of a building, which fails to state the name of the owner or person whose interest is sought to be charged, is fatally defective.

6. Since the existence of a mechanic's lien for materials depends on the establishment of a debt for which the building is a security, and such debt can only be shown by a judicial proceeding, to which the debtor is a party, a judgment establishing a lien against a building in an action to which neither the person contracting the debt, nor the owner of the interest sought to be charged with the lien, was a party, was invalid.

### ON MOTION FOR REHEARING.

1. Where the denials in an answer are insufficient to raise an issue on a particular allegation of the complaint, but both plaintiff and defendant introduced evidence on the theory that the issue was sufficient, it is too late for plaintiff to object for the first time on appeal that there was no issue.

2. Under the Statutes of Montana, the name of the "owner" required to be mentioned in the lien claim is the name of the owner of the interest to be effected by, or charged with, the lien, and the mention of the record owner is not sufficient when he is not the person for whose use or benefit the property, building, or improvement is constructed, repaired, or altered.

3. Though the mechanics' lien law is remedial in character, its requirements must be complied with.

4. The fact that certain persons are named as parties in the complaint does not make them such; service of summons is necessary for this purpose.

*Appeal from District Court, Flathead county; D. F. Smith, Judge.*

ACTION by the Missoula Mercantile Company against E. C. O'Donnell, Johanna S. Peterson, Olif Peterson and another. From a judgment in favor of plaintiff, and from an order denying a new trial, defendants Olif and Johanna Peterson appeal. Reversed.

### STATEMENT OF THE CASE.

This is an action to foreclose a lien for materials furnished by plaintiff for the erection of a brick dwelling upon lots 1

and 2 in block 99 of the town of Kalispell, Flathead county. As a foundation for the claim, the plaintiff alleges a contract with one E. C. O'Donnell, entered into on August 15th, 1895, under the terms of which plaintiff was to furnish certain hardware to the said O'Donnell, to be used in the erection of said building, for which the said O'Donnell agreed to pay the reasonable value. It is alleged that the said materials were so furnished at various times, beginning on August 19, 1895, and up to and including January 23, 1896, the date of the last item; that the price of the whole thereof, with interest from the last-named date, remains due and unpaid; and that all the materials were used in the construction of said building. The complaint then continues, substantially: That the said E. C. O'Donnell and one Mary O'Donnell during all the times mentioned were husband and wife, living together as such; that at the time the said contract was made the said Mary O'Donnell had made a contract to purchase said lots 1 and 2 from the Kalispell Townsite Company, the owner thereof, under the terms of which she was to become the owner upon paying the full amount of the price agreed upon between herself and the said company; that she had entered upon and taken possession of said premises, with full authority to make improvements thereon; that the building was erected by E. C. O'Donnell for the said Mary O'Donnell, under her direction and authorization, after she had made the contract aforesaid with the Kalispell Townsite Company; that on or about November 11, 1895, to enable her to raise money to complete the building, she transferred her interest in the lots to the Kalispell Building & Loan Association, for money advanced to her by said last-named company; that thereupon the said Townsite Company conveyed the lots to the Kalispell Building & Loan Association, which thereafter held the same as security only for the money so loaned by it to Mary O'Donnell; that thereafter, and on or about July 26, 1896, the said Mary O'Donnell assigned to the defendant Johanna S. Peterson her interest in the premises, who became, and still is, the absolute owner thereof, by conveyance from the

Kalispell Building & Loan Association, made at said last named date; and that defendant Olif Peterson is her husband. Then follow the usual allegations touching the filing of the notice and claim of lien with the recorder of Flathead county. This was filed on April 17, 1896. The claim is made a part of the complaint, as an exhibit. It consists of an itemized account of the goods furnished from August 19, 1895, up to and including January 23, 1896, between plaintiff and E. C. O'Donnell, and is verified by the following affidavit:

"State of Montana, }
"County of Flathead, }    ss.

"H. C. Keith, affiant, makes oath and says that the Missoula Mercantile Company is a corporation duly created and existing under the laws of the state of Montana; that the annexed is a true and correct account of the material furnished by said Missoula Mercantile Company to and for E. C. O'Donnell, at Kalispell, in said county, and that the prices thereof, set forth in the account hereto annexed, are just and reasonable, and the same is unpaid; that said material was furnished for said E. C. O'Donnell at the time in said account mentioned, under and by virtue of a contract between affiant, as managing agent for said Missoula Mercantile Company, and said E. C. O'Donnell, and for a certain brick building located on the premises hereinafter described. And affiant further makes oath and says that the Kalispell Townsite Company and Kalispell Building & Loan Association were, at the time said contract was entered into, and said labor was performed, and said material was furnished, the owner of said brick dwelling, and that said building is situate on a certain lot of land owned by the Kalispell Building & Loan Association, described as follows: Lots one and two (1 & 2), block ninety-nine (99), of the original townsite of Kalispell, county of Flathead, state of Montana. And this affiant, as managing agent for said Missoula Mercantile Company, claims a lien on said premises for said Missoula Mercantile Co.

                              "H. C. Keith.

"Subscribed and sworn to before me this 16th day of April, A. D. 1896.

"Robert L. Clinton,

"[Seal.]                                   Notary Public."

The complaint concludes with a prayer for judgment against E. C. O'Donnell and Mary O'Donnell for the amount due on the account, with interest and costs, including attorney's fees and necessary disbursements, and that the judgment be declared a lien upon the property described. The O'Donnells were made parties in the complaint, but neither was served with summons. The Townsite Company and the Building & Loan Association were not made parties. At the hearing the names of the O'Donnells were stricken from the complaint upon the request of plaintiff's counsel. Olif and Johanna Peterson answered, denying all the material allegations of the complaint. The cause was heard without a jury. The court found for plaintiff on all the issues, and rendered judgment that the claim of plaintiff, with costs, disbursements, and attorney's fees, amounting in all to $202.01, was a lien upon the premises described, and directed them to be sold to satisfy this amount. The defendants Olif and Johanna Peterson appeal from this judgment and an order denying their motion for a new trial.

*Mr. Frank L. Gray*, for Appellants.

*Mr. W. N. Noffsinger*, for Respondent.

MR. CHIEF JUSTICE BRANTLY, after stating the case, delivered the opinion of the Court.

1. The brief filed in this cause by counsel for appellants fails almost entirely to meet the requirements of Section 3 of Rule X. This section (subdivision "c") requires "a brief of the argument exhibiting a clear statement of the points of law or fact to be discussed, with a reference to the page of the record, and the authorities relied upon in support of each point." Appellants' brief, after a specification of 13 errors

as grounds for a reversal of the judgment, discusses briefly the demurrer interposed to the original complaint, and the insufficiency of the evidence to support the finding of the trial court, and then proceeds: "We will respectfully submit the following authorities, which we think are applicable to the demurrer, motion for nonsuit, and motion to strike lien, hereinbefore referred to; also, other assignments of error." Then follow citations of authorities, without any attempt to apply or refer them, in a consecutive or orderly way, to any of the errors assigned. In order to consider the points thus sought to be made by counsel, it would be necessary for us to sort out the authorities, refer and apply them to the appropriate assignments, and thus determine whether there is merit in appellants' contentions. This task we must decline to undertake. The duty of counsel under the rule has been noticed and emphasized so often (*Beck* v. *O' Connor*, 21 Mont. 109, 53 Pac. 94; *Babcock* v. *Caldwell*, 22 Mont. 460, 56 Pac. 1081; *Gibson* v. *Hubbard*, 22 Mont. 517, 57 Pac. 88) that it should not be necessary to revert to it again. If counsel cannot present their contentions in a clear and orderly way, it were better to leave them unnoticed in the brief; for this Court will not undertake the labor which counsel should perform.

2. Omitting consideration of any of the matters just mentioned, we pass to the examination of the only question fairly presented in appellants' brief. The court below found generally that "all the averments of the complaint are true." This general finding necessarily includes a finding as true of the essential averment that the plaintiff filed with the clerk of Flathead county, within 90 days from the time the materials were furnished, its claim of lien, sufficient in substance to meet the requirements of the statute (Section 2131, Code of Civil Procedure.) Appellants contend that the proof on this point does not support the finding. Whether this is so depends first upon whether the last two items charged in the account on January 23, 1896, were furnished for, and used in, the construction of the O'Donnell house. These items are shingle nails and one flue stop, charged at 25 and 15 cents,

respectively.    The last charge made upon  the account  prior
to January 23d, was on  January 10th.    This is made up of
two items,—tin shingles and a piece of tin,—amounting to 65
cents.    The claim of  lien was filed on April 17th.    Comput-
ing the 90 days from January 23d, the claim was filed in time
(*Helena Steam  Heating & Supply Co.* v. *Wells*, 16 Mont. 65,
40 Pac. 78); but, taking January 10th as the date of the last
item, the filing was after the expiration of 90 days, and there-
fore too late.    A flue stop, such as  the article charged here,
is not a lienable article.    One of  the witnesses speaks of it
as a  "movable fixture of a house."    The proof shows that it
is a  cover for a stovepipe flue opening  into the chimney from
the interior of the house, but removable at pleasure when the
flue is to be used.    It is, therefore, not such material as enters
into the structure of a building; nor is it a fixture, within the
meaning of the statute (Section 2130, Code of  Civil Proced-
ure, and Section 1076 of the Civil Code), so as to be the sub-
ject of a lien.    (Boisot, Mech. Liens, Sec. 96.)    But, waiving
the question of the lienable character of  this item, we think
the proof fails  to show  that either it or the nails were fur-
nished for and used in the house.    The plaintiff offered proof
tending to show that E. C. O'Donnell contracted with H. C.
Keith, the manager of the plaintiff, for the furnishing of the
hardware for the building.    The books of plaintiff show these
items charged to E. C. O'Donnell on January 23d.    This ac-
count was kept separate from the other accounts of O'Donnell.
Some time in the spring of  1896 O'Donnell examined the ac-
count, and  "did not object to it,—said it was all right."    He
also promised to pay it.    This proof is not sufficient to show
that the articles were either furnished for, or entered into,
the building,—unaided, as it is, by any direct proof, or by
some such circumstances as that the work was still in progress,
and was of such character as to require such materials, and
that they were delivered at the building.    Furthermore, the
other proof tends to show, without contradiction, that the last
work done on the building was on January 10th.    On this day
one of the workmen topped the chimney, and laid around it a

few tin shingles, to make the proper joining to the roof, which was then otherwise completed.   The house, in its unfinished state, was immediately occupied by the O'Donnells, and was not completed until after the sale to Johanna Peterson, in July. There is no proof tending to show that any work was done after the house was occupied, or that any material was used in it.   The Petersons lathed and plastered the house, and finished it in other respects, after they purchased it.   These facts seem to us conclusive upon this point.   The burden is upon the plaintiff to establish his lien (Boisot, Mech. Liens, Sec. 618), and, to support this burden, he must show, not only that he furnished the materials, but also that they were used for the enhancement of the property to which he claims he has a right to resort as security for the debt thus created. In the absence of this showing, his equity does not arise. (*Silvester* v. *Mine Co.*, 80 Cal. 510, 22 Pac. 217; *Weir* v. *Barnes*, 38 Neb. 875, 57 N. W. 750; *Chapin* v. *Paper Works*, 30 Conn. 461; *Hunter* v. *Blanchard*, 18 Ill. 318; *Taggard* v. *Buckmore*, 42 Me. 77; *Shulenberg* v. *Prairie Home Institute Co.*, 65 Mo. 295.)   This is evidently the meaning of the statute (Section 2130 of the Code of Civil Procedure).

Furthermore, to establish a lien against any interest of Mrs. O'Donnell in the property in controversy,—which is the purpose of this suit,—the recorded claim of plaintiff is insufficient, in omitting to state her name as the owner, or that she was in any way interested therein.   The general rule is that, whenever the particular statute requires the claim to contain the name of the owner or reputed owner, the omission of this detail is fatal to the lien.   (Phillips, Mech. Liens, 345, and cases cited.)

Section 2131 of the Code of Civil Procedure provides that the claim shall contain a just and true account of the amount due, after allowing all credits, and a correct description of the property to be charged.   Looking to this provision alone, we should perhaps hold that it is not necessary to set forth the name of the owner.   But the following section (section 2132) provides that the county clerk shall make, in a book kept for

that purpose, an abstract containing (1) the date of the filing; (2) the name of the person holding the lien; (3) the amount thereof; (4) the name of the person against whose property the lien is filed; and (5) a description of the property to be charged.   Construing the two sections together, the conclusion seems unavoidable that the name of the owner, or person whose interest is sought to be charged, must be stated; otherwise, the clerk could not perform the duty enjoined upon him by the latter section without instituting an independent inquiry upon his own account,—a task which in no wise appertains to his official duties.   The abstract required to be made by him is of the lien, and the necessary particulars of it cannot be set forth by him unless the claim contains them.   The Supreme Court of Iowa has construed a similar statute, and holds that it does not by implication make this requirement ( *Welch* v. *McGrath,* 59 Iowa, 519, 10 N. W. 810, 13 N. W. 638); but we do not agree to a construction which renders a substantial part of these provisions useless and ineffective. In *Montana Lumber & Manufacturing Co.* v. *Obelisk Mining & Concentrating Co.*, 15 Mont. 20, 37 Pac. 897, this Court assumed that the provisions of the Compiled Statutes of 1887 (Compiled Statutes of 1887, Fifth Division, Secs. 1371–1373, and amendments, Laws 1887, p. 71), which are substantially the same as Sections 2131 and 2132, *supra,* required the claim of lien to state the name of the owner.   Again, in *Richards* v. *Lewisohn Bros.*, 19 Mont. 128, 47 Pac. 645, it was said that this construction of the provisions of the Compiled Statutes was necessary in order that they might all be harmonized and rendered effective.   We think it but a fair and reasonable construction, and should be applied to Sections 2131 and 2132, *supra.*   It imposes no burden upon the claimant, other than is contemplated by these provisions, and a compliance on the lienor's part enables the clerk to perform his duty, which otherwise he could not do.   The claim of plaintiff is therefore fatally defective in this particular.

3.   There is another question, which is not directly raised by appellant, but which is so patent upon this record that we

deem it proper to call attention to it.    The O'Donnells were not made parties.    Under the proof in the record, E. C. O'Donnell contracted the debt for the materials furnished by the plaintiff and became personally liable to pay it.    This debt is the only foundation there is for this suit.    If there is no debt, there can be no lien.    The existence of the lien depends upon the existence of the debt, for which it stands as security.    It cannot be enforced until the fact of indebtedness be shown.    This fact cannot be shown except in proper judicial proceedings for that purpose, to which proceeding the debtor is made a party.    In other words, no judgment can be rendered or enforced in any case until the debtor is made a party to the proceeding, and the fact and amount of his liability are judicially ascertained.    (*Gilliam* v. *Black*, 16 Mont. 217, 40 Pac. 303; *Kerns* v. *Flynn*, 51 Mich. 573, 17 N. W. 62; *Vreeland* v. *Ellsworth*, 71 Iowa, 347, 32 N. W. 374; *Lookout Lumber Co.* v. *Mansion Hotel & B. Ry. Co.*, 109 N. C. 658, 14 S. E. 35; *Sinnickson* v. *Lynch*, 25 N. J. Law, 317; *Estey* v. *Lumber Co.*, 4 Colo. App. 165, 34 Pac. 1113.)    The lien is not in any sense the, or any, cause of action.    It is merely an incident, ancillary or subsidiary to the main fact—which is the debt.    The creditor may waive his lien,—the incidental right,—and pursue the debtor upon his personal liability, but he cannot enforce the lien without ascertaining both the fact of indebtedness and the amount of it in the only way recognized by law; that is, by making the debtor a party, and litigating the question of indebtedness with him.    The section of the statute (Section 2138 of the Code of Civil Procedure) providing who may be made parties to suits to enforce liens in no wise changes the rule as to those who are necessary parties.

The judgment and order appealed from are reversed, and the cause is remanded, with directions to grant a new trial.

*Reversed and remanded.*

## ON MOTION FOR RE-HEARING.

[Decided April 30, 1900.]

PER CURIAM.—In support of his motion for a re-hearing in this cause, counsel for respondent contends earnestly that the conclusions stated in the original opinion are unwarranted by the record as presented in this Court, and that the judgment of the district court should have been affirmed.    While every argument suggested by counsel in support of his motion received our attention in the preparation of that opinion, the questions presented are of sufficient importance to merit some further notice.

1.    It is argued that there is no issue in the pleadings upon plaintiff's allegation that the materials were furnished for and used in the building sought to be subjected to the satisfaction of the plaintiff's claim, and that we should not have considered the assignment that the evidence is insufficient to support the finding for the plaintiff on this point.    This contention would be sustainable if we were to look to the pleadings alone to determine the issues tried.    Defendants, in their answer, first deny "specifically and generally each and every material matter and thing" contained in the complaint.    Again, referring to the paragraph of the complaint containing this allegation, defendants deny "that the whole of the material mentioned in said paragraph went into and was used in the construction of the building therein mentioned."    These denials are clearly insufficient.    No objection was made to them in the district court, however, both parties and the court treating them as sufficient.    Both plaintiff and defendants introduced evidence on the theory that the issue was sufficient. It is too late for the respondent to object for the first time in this Court that there was no issue.    It must be held to abide the result of the position assumed and maintained by it in the trial court.    (*Sweeney* v. *G. F. & C. Ry. Co.*, 11 Mont. 523, and cases cited; *Hamilton* v. *Huson*, 21 Mont. 9.)    The

declaration of E. C. O'Donnell testified to by Keith as to the correctness of the account was of value only as tending to charge O'Donnell himself. As to Mrs. O'Donnell it was a mere hearsay statement of a past transaction, and not binding on her or Johanna Peterson, even though it be conceded that he was Mrs. O'Donnell's agent in building the house.

Nor can we agree with counsel in his further contention that the statement in the claim of lien that the Kalispell Townsite Company and the Kalispell Building & Loan Association were the owners of the building and lots is sufficient to sustain a claim of lien as against the interest of Mary O'Donnell therein. It is true that under the facts set forth in the complaint and as shown by the proof, they held the record title to the lots,—the former at the time the building was commenced and the latter when the work upon the building was abandoned and the claim was filed. Under her contract for the purchase of the lots, Mary O'Donnell's rights were to be forfeited upon her failure to meet her engagements; but so long as she complied with her contract with the corporations, they had no interest at all, except incidentally in the enhancement of their security by the erection of the building. It was for her use and benefit the building was erected, and, under the relation the parties bore to the property, it was her interest only that was subject to the claim of lien at the time it was made. The two corporations were neither directly nor remotely connected with the building, nor were they brought into any contract relation with the plaintiff during its erection through the agency of the O'Donnells, or either of them. It was never the intention of the plaintiff to bind the interest of either corporation by its claim, or to affect such interest in any way. While the lien is sufficient on its face to bind any interest these corporations had, if it was the intention to bind such interest and the arrangement was such that the interest could be so bound, the facts show that neither at any time had any interest that could be bound. Our conclusion was that the statute requires the claim to set forth the name of the owner whose interest it is sought to affect, and that it is not

sufficient if it does not do so.    A further consideration of the provisions of the statute confirms this view.    The lien provided for in the statute is "upon the property upon which the work or labor is done or material furnished." (Code of Civil Procedure, Section 2130.)    The claim filed with the clerk must contain "a correct description of the property to be charged with such lien." (*Id.* 2131.)    The abstract made by the clerk must contain, among other statements, "the name of the person against whose property the lien is filed, and the description of the property to be charged with the same." (*Id.* 2132.)    In so far as the sections cited refer to the relation of ownership and property, the terms used are general.    Sections 2133, 2134, and 2135 define and limit these general expressions referring to property, and point out the interests in the property which may be charged with the lien and subjected to its satisfaction.    In case the interest of the person causing the building or other improvement to be constructed is a fee simple estate, the lien extends to the land upon which it is situated to the amount of one acre, if outside of a town or city, or to the whole of a lot or lots within a town or city.    If, however, "such person owned less than a fee simple estate," then his interest only is to be charged. (Section 2133.)    If the interest is a lease-hold interest and the lease becomes forfeited, the building or structure only is charged, and, if severable from the soil, may be sold and removed by the purchaser within twenty days after the sale. (Section 2134; *Montana L. & M. Co.* v. *Mining Co.*, 15 Mont. 20; *Johnson* v. *Puritan Mining Co.*, 19 Mont. 30.)    If the property is subject to mortgage or other incumbrance effected prior to the inception of the lien, then the lien extends to the building or structure in preference to the rights of the mortgagee, and it may be sold and removed, if severable from the soil, at any time before the mortgagee may demand possession under his foreclosure proceedings. (Section 2135; *Grand Opera House Co.* v. *Maguire*, 14 Mont. 558; *Johnson* v. *Puritan Mining Co.*, *supra.*)    Another provision of this chapter defines the word "owner" thus:    "Every person, in-

cluding guardians of minors, married women, and any company, association, or coporation not tenants or lessees, for whose use, benefit, or enjoyment any property, building, structure, or improvement mentioned in this chapter is construed, repaired, or altered, is deemed the owner thereof for the purposes of this chapter.'' The terms expressive of ownership used in the other sections, *supra*, all refer to the interests to be charged. Therefore, if this latter section serves any purpose whatever, it must be looked upon as pointing out the person who owns the interest to be charged with the lien as the proper person to be named in the claim. If this view be correct—and we hold that it is—from all these provisions the conclusion must follow, as already stated, that the name of the owner required to be mentioned in the claim is the name of the owner of the interest to be affected by or charged with the lien; and, further, that the mention of the record owner is not sufficient when the record owner is not the person for whose use or benefit the property, building, structure, or improvement in question is constructed, repaired, or altered.

Assuming that Mary O'Donnell had such an equitable interest in the lots that they were subject to a lien for the improvement erected upon them to the extent of such interest, the plaintiff should have made its claim so as to fix it upon this interest, and this could be done only by naming her as the owner. If it was sought to affect the building only, the same requirement should have been observed. (Jones on Liens, Section 1398; *Kozartee* v. *Marks*, 15 Ore. 529; *Allen* v. *Rowe*, 19 Ore. 188; Boisot Mech. Liens, Section 379; *Montana L. & M. Co.* v. *Mining Co.*, *supra*; Phillip's Mech. Liens, Section 69.) In *Montana L. & M. Co.* v. *Mining Co.*, *supra*, this Court impliedly approved this construction of the statute, for it there held that it was not necessary to state the name of the owner of the fee, but that the name of the lessee was sufficient where it was sought to charge its interest only. Consequently, the proceedings to fix and enforce a claim of lien must be initiated and conducted with

reference to both the person and property to be charged.  So long as the record owner of the fee or other interest to be charged is the person who is to be affected by the claim, he is the owner within the meaning of the statute, and it is necessary to name him as the owner; but if, as in this case, the person for whose benefit the improvement is erected does not appear of record as the owner, it is nevertheless incumbent upon the claimant to insert such owner's name in the claim. It is no hardship that he shall do so.  The claimant is bound to know for whom he works, or for whose benefit he is bestowing his materials.  If he assumes the risk without inquiry sufficient to enable him to preserve his rights it is his own fault.  The statute gives him ample time to inform himself. Though the statute is remedial in character, its requirements must be complied with.  (*Black* v. *Appolonio*, 1 Mont. 342; Phillip's Mech. Liens, 345.)  In the present case the claimant could have gained all necessary information by inquiry of the record owner or E. C. O'Donnell.  Some degree of care, at least, is required to ascertain the facts and to act in accordance with them.

There is such a wide difference between our statute and those of states like California that, in many respects, what would be held a sufficient compliance under them, would not preserve a lien under ours.  The cases cited by respondent upon the point under discussion do not apply.

2.   We deem it unnecessary to add anything to what was said in the original opinion as to necessary parties.  Whether the proceeding to enforce a lien be in the nature of a legal or equitable action, the claim cannot be enforced against the property until the debt has been ascertained by an adjudication.   In our opinion E. C. O'Donnell is a necessary party in any event, so that this determination may be had.  (Boisot, Mech. Liens, Sec. 533; cases cited in former opinion.)  If Mrs. O'Donnell is to be charged with the debt through the agency of her husband, then she is a necessary party for the same reason.  Having sold all her interest in the property after the lien became fixed, she is not otherwise a necessary

party. (Boisot, Mech. Liens, Sec. 527.) In the statement preceding the former opinion it is said that the names of the O'Donnells were, on motion of plaintiff's counsel, stricken from the complaint. The record shows that at the opening of the trial the following colloquy occurred between counsel and the court:

Counsel for Plaintiff: "We move to strike out the names of Mr. and Mrs. O'Donnell from the complaint, as there is no service against them."

The Court: "Very well, if there is no objection."

Counsel for Defendants: "There is no objection at this time; but we don't waive any of our rights."

From this condition of the record, coupled with the fact that the O'Donnells were not served with summons, we felt justified in making the above statement. Counsel complains that this statement is unwarranted, because the motion was subsequently withdrawn. The record originally filed in this Court nowhere shows this fact. With the present motion, however, counsel presents a certified copy of the minutes of the trial court made on a later day of the trial. From this it appears that as no formal order had been entered striking out the names of the O'Donnells, counsel was permitted to withdraw his motion to have this done, thus leaving the parties to stand as at the opening of the trial. We presume that the trial court, as well as counsel, will understand that what was said in the former opinion on this subject was predicated upon the record as presented and considered at the hearing. The fact that the O'Donnells were named as parties in the complaint did not make them such. Service of summons was necessary for this purpose. Whether they were formally dismissed from the case or not, their rights could not be affected by anything done at the trial. Nor could the rights of the Petersons be affected by the judgment then rendered, because the debt upon which the claim of lien is founded was not and could not be adjudicated by it, so as to authorize a sale of the property. If the plaintiff desires to do so, it may proceed to have the O'Donnells served with summons, whereupon the

trial court may determine their rights as they appear. So far as the integrity of the judgment appealed from is concerned, the result is the same as if the case had been formally dismissed as to them.

The motion for a rehearing is denied.

*Denied.*